UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00020-HBB

BAY AREA HEALTHCARE
ADVISORS, LLC                                                              PLAINTIFF

VS.

PREMIERTOX 2.0, INC.                                                       DEFENDANT

## MEMORANDUM, OPINION, AND ORDER

Plaintiff Bay Area Healthcare Advisors, LLC ("Bay Area") has filed a motion for protective order (DN 20). Defendant PremierTox 2.0, Inc. ("PremierTox") has responded (DN 23), and Bay Area has replied (DN 26). This matter is ripe for ruling.

BACKGROUND

Bay Area is a healthcare services company that provides Medicare reimbursement strategies and regulatory compliance. Around May 1, 2014, Bay Area entered into a five-year contract with PremierTox, an independent clinical laboratory that performs urine drug testing ordered by physicians (DN 1, at pp. 2-3). The contract specified that Bay Area would provide annual independent reviews required by PremierTox's Corporate Integrity Agreement ("CIA") with the Office of Inspector General of the Department of Health and Human Services ("OIG/HHS") (Id. at p. 3). As part of Bay Area's contractual duties, it was required to perform a statistical sample and claim review of a specified number of claims submitted and paid for each 12-month period (Id.).

Bay Area and PremierTox experienced issues regarding the audit for year one, which led to PremierTox cancelling the contract in January of 2016 (Id. at p. 6). PremierTox engaged another independent review organization ("IRO") to complete the remaining work on the first year audit and for future audits (Id.). Almost one month later, Bay Area filed its Complaint asserting claims of (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) anticipatory breach of contract; and (4) promissory estoppel (DN 1). PremierTox answered with six affirmative defenses and five counterclaims (DN 6). This Court dismissed three of PremierTox's counterclaims but found that PremierTox's counterclaim for fraud was sufficient to survive a motion for judgment on the pleadings (DN 28).

Now, Bay Area seeks a protective order, in response to PremierTox's request to take the deposition of Bay Area's corporate designee, James Cesare (DN 20, at p. 1). Bay Area requests the protective order limit PremierTox's discovery in three respects, all of which revolve around disclosure of the identities of Bay Area's business clients: (1) exclusion from James Cesare's discovery deposition any inquiry into the identities of Bay Area's past and present business clients; (2) excusing Bay Area from providing the identities of its business clients in response to PremierTox's current written discovery requests; and (3) precluding PremierTox from further inquiry into the identities of Bay Area's business clients in any additional written discovery (DN 20-3).

In an affidavit from its president and CEO James M Cesare, tendered in support of the motion, Bay Area asserts because its client information is secret and confidential, disclosure of the information would cause it "irreparable harm" (DN 20-1). Bay Area further believes that PremierTox has requested the identities of its clients in order to harass or oppress it (Id.). Bay Area asserts that PremierTox will contact Bay Area's customers and thereby interfere with Bay

Area's present and future business relationships (Id. at pp. 2-3).  Cesare indicates that Bay Area has "never had their IRO employment contract terminated or ended prior to full five year completion, for any reason, by any individual or entity," (DN 20-1, p. 2).  As such, Bay Area maintains PremierTox's discovery requests are unnecessary (Id. at pp. 3-4).  Finally, Bay Area argues because PremierTox's fraud claim is manifestly unsupported and cannot succeed, it was pled only to make client information from Bay Area vulnerable to discovery requests (Id. at p. 4).

In response, PremierTox states it has indicated a willingness to protect Bay Area's claimed "trade secrets" by keeping client names confidential, assigning identifiers for the clients, and avoiding asking about current clients (DN 23, at p. 1).  PremierTox contends, however, that information about Bay Area's similar misconduct or negligence with past clients relates to key issues to the case and is central to its defense (Id. at p. 2).  PremierTox clarifies that it propounded the discovery requests so it could speak to other entities Bay Area has contracted with and review the public records from IRO reports to determine Bay Area's expertise, abilities and defects in past performance (Id.).  PremierTox also wishes to explore Bay Area's performance which was "contemporaneous" with the alleged insufficient services it provided to PremierTox (Id. at p. 5).  Further, PremierTox explains that it does not seek any trade secrets of Bay Area, but, even if it did, there are no such trade secrets in a structured government reviewed field (Id. at p. 9).  PremierTox also argues that, because Bay Area brought these issues into the judicial forum, it cannot now complain that it does not want the information reviewed (Id. at p. 7).  As for the relevancy of the information it seeks, PremierTox notes that it has narrowly defined the discovery request to "merely determine whether Bay Area was even capable of providing the services it agreed to render for PremierTox" (Id. at p. 11).  In sum, PremierTox

3

feels Bay Area has failed to meet the legal standards required for a protective order because the information PremierTox seeks is relevant and admissible in the action (Id. at p. 8).

Bay Area's reply identifies what it believes are four deficiencies with PremierTox's response. First, Bay Area argues that PremierTox's claim that Bay Area is seeking to protect its business practices is a mischaracterization (DN 26, at p. 2).. Bay area specifies that it only seeks to forbid inquiry into the names of its business clients (Id.). Bay Area reasserts that its past and present client lists easily meet the definition of a trade secret under Kentucky law (Id. at p. 4). Second, Bay Area states it has nothing to hide because there are no prior client complaints about nonperformance of deficient performance, as stated in Cesare's affidavit (Id.). Third, Bay Area contends there is no basis for PremierTox's alleged "belief" that it has issues of nonperformance or deficient performance with any other client (Id.). Bay Area specifically points to PremierTox's failure to produce any documents to support this "belief" (Id. at p. 6). Fourth, Bay area argues that PremierTox's suggestion that it will review "public records" related to Bay Area's work as an IRO proves that it doesn't need the names of Bay Area's clients (Id.). Because PremierTox can obtain client complaints through these "available public records," Bay Area concludes PremierTox has no legitimate reason to go fishing through its client lists.

ANALYSIS

Federal Rule of Civil Procedure 26(c) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending[.]" On good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." Fed.R.Civ.P. 26(c)(1). This "good cause" standard requires the party seeking the protective order to demonstrate a "sound basis or legitimate need" to limit discovery of the subject information. Sierra Equity Grp v. White Oak

Equity Ptnrs LLC, 672 F. Supp. 2d 1369 (S.D. Fl. 2009) (*quoting* In re Alexander Grant & Co. Litig., 820 F.2d 352, 356 (11th Cir. 1987). Yet good cause is not established by merely showing that discovery might involve inconvenience or expense. Lehnert v. Ferris Faculty Ass'n-MEA-NEA, 556 F. Supp. 316, 318 (W.D. Mich. 1983) (citations omitted). Finally, the grant or denial of a protective order is within the sound discretion of the court's power to manage the case. *See* Conti v. Am. Axle & Mfg., Inc., 326 F. App'x 900, 903-04 (6th Cir. 2009).

### Trade Secret Status of Bay Area's Client Identities

Much of Bay Area's argument relies on its assertion that its client names and identifying information are trade secrets, which are confidential and not subject to disclosure. In Kentucky, "trade secret" is defined as "information, including a formula, pattern, compilation, program, data, device, method, technique, or process," that "(a) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (b) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." K.R.S. § 365.880(4). Determining whether a specific type of information constitutes a trade secret is a question of fact. Fastenal Co. v. Crawford, 609 F. Supp. 2d 650, 671 (E.D. Ky. 2009) (*citing* KCH Servs., Inc. v. Vanaire, Inc., No. 05-777-C, 2008 WL 4401391, at *2 (W.D. Ky. Sept. 24, 2008).

Although Kentucky courts have not directly addressed whether a customer list constitutes a trade secret, the Sixth Circuit has offered some guidance in making this determination. Fastenal, 609 F. Supp. 2d at 671 (*citing* ATC Distribution Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc., 402 F.3d 700, 714 (6th Cir. 2005)). The Sixth Circuit distinguishes between "lists of customers 'discoverable only through extraordinary efforts and . . . through

many years' expenditure of time and money,'" versus lists of customers whose identities "may be obtained through such legitimate channels as telephone books, the internet, or by calling local businesses." ATC Distribution Grp., Inc., 402 F.3d at 714 (*quoting* In re Am. Preferred Prescriptions v. Health Mgmt., Inc., 186 B.R. 350, 356 (Bankr. E.D.N.Y. 1995)).

Bay Area generally argues that its client list is discoverable only through extraordinary effort and through many years expenditure of time and money. But a bald assertion that a customer list constitutes a trade secret is not enough to support entry of protective order. Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc., 235 F.R.D. 435, 440 (N.D. Ill. 2006) (*citing* Surface Shields, Inc. v. Poly-Tak Protection Systems, Inc., No. 02 C 7228, 2003 WL 21800424, at *1 (N.D. Ill. July 30, 2003)). Moreover, while Bay Area claims the client list is a trade secret, it simultaneously argues that PremierTox can ascertain the names of clients through publicly available documents.

This is not an instance in which Bay Area is concerned that a competitor will use the identities of its clients to Bay Area's disadvantage if the information is made public. Bay Area admits it is not attempting to shield the information from public disclosure and only wants to prevent PremierTox from obtaining the information. "Bay Area is specifically seeking to protect its client's identifying information from PremierTox and not from anyone else . . . ." (DN 26, p. 7) (emphasis in original). "Bay Area isn't concerned about *competitors* getting a hold of its client list, but *PremierTox* getting a hold of it" (Id. at p. 9) (emphasis is original). Further, Bay Area makes clear that it is not concerned that PremierTox will use the information to obtain a competitive advantage in the commercial arena. Bay Area fears that PremierTox will contact its former clients and disparage it:

> What will PremierTox do with a list of Bay Area's clients? PremierTox has already telegraphed its intention: It is **only**

> interested in conducting a "fishing expedition," contacting as many of Bay Area's past business clients as possible to ask them pernicious, speculative, unfounded leading questions such as: Was Bay Area even 'capable of providing the services it agreed to render'? (*PremierTox Response*, at p. 11). Did Bay Area 'hold itself out as qualified, well staffed, experienced and capable,' only to show those assertions to be 'specious'? (*PremierTox Response* at p. 10). And so on.

(Id. at p. 9) (emphasis in original).

Thus, while Bay Area frames the issue in terms of protection of trade secrets, the motion is really about whether the information is relevant, and, if so, whether PremierTox's intention of contacting prior clients constitutes an annoyance, embarrassment or oppression under Rule 26(c)(1).

### Relevance of Bay Area's Client Identities

Federal Rule of Civil Procedure 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). *See also* Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment. Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (citation omitted). While the party seeking to compel discovery bears the burden of demonstrating relevance (*see* United States ex rel. Gruenbaum v. Werner Enters., Inc., 270 F.R.D. 298, 302 (S.D. Ohio 2010); Anderson v. Dillard's, Inc., 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008)), here Bay Area seeks a protective order and, as such, bears the burden of demonstrating the lack of relevance. Janko Enters., Inc. v. Long John Silver's, Inc., No. 3:12-CV-345-S, 2013 U.S. Dist. LEXIS 135107, *6-7 (W.D. Ky. Aug. 19, 2013). The Court has wide discretion when dealing with discovery matters, such as deciding if information might be

7

relevant. *See* S.S. v. E. Ky. Univ., 532 F.3d 445, 451 (6th Cir. 2008); Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1240 (6th Cir. 1981).

To the extent Bay Area relies upon the anticipated dismissal of PremierTox's counterclaim for fraud, the Court has denied Bay Area's motion for judgment on the pleadings on PremierTox's fraud counterclaim (DN 28), and this argument is therefore unavailing. Bay Area does not contend that provision of a list of customer identities is unduly burdensome or disproportionate to the case, leaving the issue one of strict relevance. As to relevance, PremierTox asserts: "PremierTox' defense to the suit is that Bay Area was incompetent, understaffed and unable to provide the services required of an IRO." Consequently:

> PremierTox is asking in discovery whether this failure had occurred before with respect to other clients, and whether this failure was intentional, negligence or simply due to inability. Bay Area's prior clients are the custodians of exactly that information. This is particularly so with regard to clients for whom Bay Area was acting as IRO in 2014-15, the time in which Bay Area failed to perform the IRO duties for PremierTox.

(DN 23, p. 2-3).

"[A] misrepresentation to support an allegation of fraud must be made concerning a present or pre-existing fact, and not in respect to promise to perform in the future." PCR Contractors, Inc. v. Danial, 354 S.W.3d 610, 613 (Ky. App. 2011) (*quoting* Filbeck v. Coomer, 182 S.W.2d 641, 643 (Ky. 1944). Consequently, the relevant inquiry is whether Bay Area was competent, adequately staffed, and able to provide the services required of an IRO *at the time Bay Area made any such representation* to PremierTox. Whether Bay Area suffered from any deficiencies in work for other clients in the past appears to bear little relevance to the accuracy of the representations made at the time in question. However, the same cannot be said with regard to contemporaneous clients. Such evidence might reflect upon Bay Area's abilities at the time it

8

made representations to PremierTox. *See* <u>Overseas Fashion Indus., Inc. v. River Heights, Inc.</u>, No. 88 Civ. 2450 (RPP), 1990 U.S. Dist. LEXIS 29, *4 (E.D.N.Y. Jan. 4, 1990) (Information about other customers relevant to claim of fraud as alleged misrepresentations concerned party's ability to produce ordered goods on time).

Bay Area has made two arguments that PremierTox has not demonstrated any basis upon which to seek discovery related to other clients. First, Bay Area points to Cesare's affidavit and other discovery responses which it believes establish Bay Area "never had their IRO employment contract terminated or ended prior to full five year completion, for any reason, by any individual or entity." However, PremierTox is not required to accept Bay Area at its word on this issue and is entitled to conduct an independent investigation to verify the accuracy of the representation. The second argument is that PremierTox has not produced any documents or evidence which would support the proposition that Bay Area was terminated from other IRO service relationships. Whether or not IRO contracts were terminated is not the totality of the relevant inquiry, as a customer might be dissatisfied and yet not terminate the contract. Moreover, although Bay Area contends that PremierTox's proposed discovery is no more than an unfounded fishing expedition because it has not produced any evidence, Bay Area's positon places PremierTox in the classic "chicken or the egg" position, in which PremierTox must present evidence in order to demonstrate entitlement to engage in discovery to obtain evidence.

<u>Whether PremierTox's Proposed Discovery Will<br>Unduly Annoy, Embarrass, or Oppress Bay Area</u>

Bay Area is concerned that PremierTox will use the discovery of client identities to contact those entities and make defamatory comments or insinuations which could damage Bay Area's business relationships or future business prospects. While Bay Area recognizes that such conduct might give rise to claim against PremierTox in tort, Bay Area finds "cold comfort" in

this because "the damage will already have been done" (DN 20, p. 4). However, mere speculation that the opposing counsel's contact with a customer will cause damage to a business relationship is insufficient to warrant precluding such contact. Nemir v. Mitsubishi Motors Corp., 381 F.3d 540, 545 (6th Cir. 2004).

## **ORDER**

**IT IS HEREBY ORDERED** that the motion of Bay Area for a protective order (DN 20) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Bay Area shall not be obligated to disclose the identities of past clients or present clients, but shall be obligated to disclose the identities of any clients for whom it was providing IRO services at the time it was also providing IRO services to PremierTox.

Copies:     Counsel